UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
TUCSON DIVISION

JUSTIN THOMAS,

  Plaintiff,

-VS-

CONN APPLIANCES, INC.

  Defendant.

_____/

CASE No.:

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, JUSTIN THOMAS, by and through the undersigned counsel, and sues Defendant, CONN APPLIANCES, INC., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like CONN APPLIANCES, INC. (hereinafter "Conn's" or Defendant), from invading American citizens' privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, --US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the ***1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991) Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." *The FCC's Push to Combat Robocalls & Spoofing* (Jan. 2, 2019), https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Pima County, Arizona. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Arizona, residing in Tucson, Pima County, Arizona.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporation which was formed in Texas with its principal place of business located at 2445 Technology Forest Blvd., Ste. 800, The Woodlands, Texas, 77381 and which conducts business in the State of Arizona through its registered agent, C T Corporation System, located at 3800 Central Ave., Ste. 460, Phoenix, Arizona 85012.

11. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (845) *** - 9639, and was the called party and recipient of Defendant's hereinafter described calls.

12. In early 2018, Plaintiff began receiving calls to his aforementioned cellular telephone from Defendant seeking to recover an alleged consumer debt related to the financing of certain household items.

13. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number(s): (800) 838-8434 and (800) 898-7105; and when those numbers are called, an agent/representative answers the phone and identifies themselves as an employee of Conn's Appliances.

14. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including, but not limited to, a predictive dialer)[1] or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

15. Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because when he answered a call from the Defendant he would hear either an extended pause before a representative would come on the line, or an automated message telling him the call was from Conn Appliances, and to please hold the line for the next available representative.

16. Additionally, on a substantial number of occasions, Plaintiff would answer a call from a telephone number he recognized belonging to Defendant, Plaintiff would say "Hello? Hello?", and no one would come on the line. This is commonly referred to as an "abandoned call" and is characteristic of the use of an ATDS/predictive dialer.

---

[1] See *Marks v. Crunch San Diego, LLC*, 904 F. 3d 1041 (9th Cir. 2018).

17. Moreover, recent court filings by Conn's, show that Conn's uses a Noble Outbound Predictive Dialer to willfully violate the TCPA as part of its routine business practice. *See* Case 4:18-cv-03087 (SDTX), Doc. 1-2, Transcript of Final Arbitration Hearing in *Williams v. Conn's*, July 23-24, 2018 (filed September 4, 2018) (the "*Williams* Transcript").

18. Conn's senior manager of compliance and corporate representative, Clinton R. Walton ("Walton"), testified under oath that Conn's:

   a. uses the "Noble Outbound Predictive Dialer";

   b. places "about 600,000 outbound calls per day" to people like Plaintiff;

   c. "[e]very day on average, Conn's leaves 18,000 people hanging on the phone with no one there" (i.e., dropped/abandoned calls);

   d. employs "about 850" call agents in four different "call centers," and;

   e. has "up to three phone lines per agent" in the call centers.

*See Williams* Transcript, 6:1-2, 6:15-21, 12:9-12, 16:15-16, 42:8-9, 222:20-223:16, 262:19-22, 263:13-15, 364:19-365:4, 479:21-22, 483:4-5, 541:20-21.

19. Furthermore, some or all of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

20. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

21. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

22. On or about February 25, 2018, Plaintiff received a call from the Defendant, met with an extended pause, eventually was connected to a live representative, and informed that agent/representative of Defendant that he was aware of his obligation, explained that he was working to keep a roof over his head, the constant automated calls were harassing and causing him problems with his employer, and demanded that the Defendant cease placing calls to his aforementioned cellular telephone number.

23. During the aforementioned phone conversation on or about February 25, 2018 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have believed it

had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

24. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

25. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

26. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

27. On at least five (5) separate occasions, Plaintiff has either answered a call from Defendant or returned a call to Defendant regarding his account, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

28. Each of the Plaintiff's requests for the harassment to end was ignored.

29. From about February 25, 2018 through the filing of this Complaint, Defendant has placed approximately twelve hundred (1,200) actionable calls to Plaintiff's aforementioned cellular telephone number (please see attached **Exhibit "A"** representing a non-exclusive call log of thirty (30) calls from May 1, 2018 through May 14, 2018).

30. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

31. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

32. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant call.

33. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. Plaintiff had to waste time to deal with missed call

notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

34. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

35. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

36. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

37. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and

individualized way by stress, embarrassment, anxiety, distress and aggravation.

38. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

39. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

40. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

41. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

42. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

43. Defendant violated the TCPA with respect to the Plaintiff.

44. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

45.     Plaintiff realleges and incorporates paragraphs one (1) through forty-four (44) above as if fully set forth herein.

46.     Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff did not wish to receive any telephone communication from Defendant, and demanded for the calls to stop.

47.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Conn Appliances, Inc. for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully Submitted,

*/s/ Richard Suzuki, Esq.*
Richard J. Suzuki, Esquire

Arizona Bar. No: 021348
Suzuki Law Offices
2929 E. Camelback Road, Suite 224
Phoenix, AZ
Tele: (602) 842-6762
rj@suzukilawoffices.com
pearl@suzukilawoffices.com
dennis@suzukilawoffices.com
*Attorney for Plaintiff*

and


*/s/ Shaughn C. Hill*
Shaughn C. Hill, Esquire
Florida Bar No.: 105998
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
SHill@ForThePeople.com
KZhang@ForThePeople.com
Attorney for Plaintiff
*(Application for admission Pro Hac Vice to be filed)*

13